UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAMES ANDERSON,

                    Petitioner,

           -against-

UNITED STATES OF AMERICA,

                    Respondent.
-----------------------------------------------------------------X

**FILED**
**CLERK**

6/3/2022 12:46 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**<u>MEMORANDUM AND ORDER</u>**
05-CR-418 (GRB)

**GARY R. BROWN, United States District Judge:**

      Petitioner James Anderson, who has served about 17 years of a 27-year sentence for armed robbery, filed the instant motion pursuant to 18 U.S.C. §3582(c)(1)(A) seeking immediate release due to the risks to defendant should he contract COVID in light of underlying medical issues.  For many reasons, including the fact that defendant has been vaccinated against the disease, the COVID-based application for immediate release proves unpersuasive.

      In the alternative, defendant seeks sentence reduction under §3582(c)(1)(A) due to a panoply of medical conditions, most of which arose after his sentencing, and the concomitant reduced chance of recidivism by defendant.  This portion of the application raises a far more challenging question: does this case, in which the record reveals that defendant's sentence was based exclusively on defendant's potential dangerousness, and that danger has been abated by intervening, serious medical issues, present extraordinary and compelling circumstances warranting a sentencing reduction?  Finding that it does, and after considering the relevant §3553(a) factors, the Court reduces the defendant's sentence from 327 to 262 months.  Thus, for the reasons set forth herein, the application for immediate release is DENIED, but his application for a sentence reduction is GRANTED.

1

**Relevant Facts and Procedural History**

This matter, originally before the Honorable Sandra J. Feuerstein, was reassigned to the undersigned following Judge Feuerstein's passing.   The Government provided the following summary of the underlying offense conduct and the resulting charges, which are not in dispute:

> On May 25, 2005, a grand jury sitting in the Eastern District of New York returned a two-count indictment, charging the defendant with the Hobbs Act robbery of the King Kullen grocery store located at 795 Old Country Road, Riverhead, New York ("King Kullen") and brandishing a firearm in furtherance of that crime, and an arrest warrant was issued for the defendant.  *See* ECF Docket No. 1 (Indictment). As set forth in the PSR, on September 21, 2004, the defendant, who was armed with a semi-automatic handgun and displayed what appeared to be a bomb, robbed the King Kullen.  PSR at ¶ 4.  Specifically, the robbery took place after the defendant entered the King Kullen, approached the store manager, pointed a handgun at him, and forced him to bring him to the store safe.  *Id.*  Once at the safe, the defendant opened a bag and displayed what appeared to be an explosive device.  *Id*.  The defendant then emptied the safe of bags of money, which he put into a garbage bag, and fled the King Kullen.  *Id.*  Subsequent investigation determined that the defendant stole approximately $5,550.03.  *Id.*
>
> Thereafter, on May 3, 2007, the grand jury returned a Superseding Indictment, which added armed Hobbs Act robbery, firearms and carjacking charges against the defendant in connection with the armed robbery of the McDonald's Restaurant in Riverhead, New York.  *See* ECF Docket No. 42 (Superseding Indictment).  As set forth in the PSR, on November 16, 2003, the defendant accosted the restaurant manager and two employees after they closed the restaurant for the night and were walking to a vehicle.  PSR at ¶ 3.  The defendant approached, pointing a handgun at the employees, and forced them back into the restaurant.  *Id*.  Once inside, the defendant ordered the manager to open the safe and give him all the money inside.  *Id.*  The manager complied and gave the defendant the contents of the safe, approximately $2,182.  *Id*.  The defendant fled and drove away in the manager's vehicle.  *Id*.

DE 96 at 1-2.  At the time of the instant offenses, defendant was on state parole for a knife-point robbery of a clothing store and a gunpoint robbery of another McDonald's restaurant.  PSR at ¶¶ 28, 30.  The defendant was arrested on a New York State parole warrant in Connecticut on May 27, 2005 and transferred to federal custody on June 1, 2005.  PSR at 1.

A review of the docket demonstrates that trial was set, jury selection began and the defendant pled guilty to the King Kullen robbery and firearms charges.  Taken together, the offense conduct represented, without question, egregious conduct that, when combined with the defendant's extraordinary criminal history, warranted a substantial sentence.  The statutory maximum on the §1951(a) charge was 20 years, while the 924(c) firearms charge carried a minimum consecutive term of seven years and a maximum of life.  Ultimately, the Probation Department calculated an advisory U.S.S.G. range of 262 to 327 months, or about 22 to 27 years.

Judge Feuerstein sentenced the defendant to 327 months.  A review of the sentencing transcript[1] makes it plain that the principal concern was the need for specific deterrence.  The prosecutor argued:[2]

> This is obviously a very serious crime.  The defendant has a lengthy criminal history.  And I think when you look at 3553(a) factors, the need for deterrence, and in particular the need to protect the public from further crimes by the defendant, a sentence within the guideline range of 262 months to 327 months as set forth, is necessary here, your Honor.

DE 100-1, Tr. at 10.  And in discussing whether to adjourn sentencing in anticipation of a sentence that would be higher than the Guidelines range, Judge Feuerstein stated:

> I'm really going over in my mind whether or not those additional months would make any sort of an incremental difference in your client's attitude or behavior upon release.  That's really what I'm weighing, whether or not it is worth it to put it over for that purpose, or will it have a negligible effect, those additional months, on his return to society.

*Id.* at 5.  Following the Court's expressed intent to consider a sentence above the Guidelines range, his attorney requested that the Court sentence defendant to "no more than" 240 months on the

---

[1] The Statement of Reasons filed under seal indicates only that the sentence was within the Guidelines range and that the PSR was adopted without change.  DE 78.

[2] In addition to the information contained in the Presentence Report, the Probation Department provided a sentencing recommendation of 360 months, to address "the need for punishment and deterrence."  However, that recommendation was expressly predicated upon considerations which Judge Feuerstein rejected as inappropriate.  DE 100-1, Tr. at 7-9.

substantive robbery count – the Guidelines and statutory maximum – plus the mandatory consecutive minimum of seven years, for a total sentence of 27 years. *Id.* at 6. The following colloquy provides insight into the purpose of the sentence ultimately imposed:

> MS. GAFFEY: The bottom line here, your Honor – I mean, I understand what Mr. Anderson's record looks like. But I think at some point there is a matter of diminishing marginal returns, and simply warehousing someone that the taxpayers are paying for with no benefit.
>
> THE COURT: But I'm weighing that against the likelihood of him getting out and continue to commit violent crimes.

*Id.* at 6-7. Absent the instant application, defendant would not be released until 2030 (which apparently includes good time incentives). DE 96 at 3. Thus, at this writing, defendant has served approximately 17 years, DE 93-1 at 26, with about eight years remaining.

*The Defendant's Health*

At the time of sentencing, defendant faced two known health concerns. One was elevated blood pressure, which was being treated with medications. PSR ¶52. The second were torn Achilles tendons, sustained while playing basketball in prison, and purportedly medically mishandled, resulting in some medical limitations. DE 75 at 2; PSR ¶53 (noting that he could not stand on his right toes). No other health concerns were reported at the time of sentence. PSR ¶54.

Nearly two decades later, his health profile has profoundly changed. The defendant is morbidly obese, at 310 pounds, with a BMI of 42. DE 93-1 at 7. He continues to struggle with high blood pressure, measuring in "the high-end of stage one hypertension." *Id.* He has developed atrial fibrillation, resulting in an irregular heartbeat, as well as sleep apnea. *Id.* Importantly, the combination of his extreme weight issues, atrial fibrillation and damaged Achilles tendons severely limit defendant's mobility; walking is the most vigorous exercise recommended for defendant. DE 93-1 at 21. Defendant has been vaccinated against COVID. DE 96 at 9.

**Discussion**

*Standard for Review of a First Step Act Motion (18 U.S.C. § 3582(c)(1)(A))*

Section 3582 (c)(1)(A) of Title 18, United States Code, provides in relevant part:

> the court, upon motion [ ] of the defendant [ ] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – extraordinary and compelling reasons warrant such a reduction . . . .

As the Second Circuit recently held:

> 18 U.S.C. § 3582(c)(1)(A), the compassionate release provision, permits a defendant to move for a reduction in sentence, up to and including release from prison [ ]. Before it can reduce a term of imprisonment or release a defendant under § 3582(c)(1)(A), a district court must "find[ ] that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Even if "extraordinary and compelling" circumstances exist, however, the court must also consider "the factors set forth in section 3553(a) to the extent that they are applicable" before it can reduce the defendant's sentence. *Id*. § 3582(c)(1)(A).
>
> Thus, extraordinary and compelling reasons are necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A). As we have just noted, a district court must also consider "the factors set forth in section 3553(a)" before granting relief.

*United States v. Jones,* 17 F.4th 371, 373–74 (2d Cir. 2021).

In appropriate cases, a district court may "assume[ ] the existence of extraordinary and compelling circumstances warranting release" but determine that "'reasonable evaluation of the Section 3553(a) factors'" provides "'an alternative and independent basis for denial of compassionate release.'" *Id.* at 374 (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021)). In conducting a Section 3553(a) analysis on a First Step Act application, the Court of Appeals has "never required a district court to 'address every argument the defendant has made or discuss every § 3553(a) factor individually.'" *United States v. Conley,* 2022 WL 1487209, at *1

(2d Cir. May 11, 2022) (quoting *United States v. Keitt*, 21 F.4th 67, 72 (2d Cir. 2021) (quoting

*United States v. Rosa*, 957 F.3d 113, 119 (2d Cir. 2020))).

The Government urges the Court to deny Anderson relief based on the criteria set forth in

Application Note 1 of § 1B1.13 of the United States Sentencing Guidelines, claiming that these

provisions continue to assert persuasive force.  This argument has been roundly rejected.  *United*

*States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020) ("despite Application Note 1(D), the First Step

Act freed district courts to exercise their discretion in determining what are extraordinary

circumstances"); *United States v. Callahan*, 2021 WL 2661144, at *1 (E.D.N.Y. June 29, 2021)

("In *Brooker*, the Second Circuit decided, as a matter of first impression, whether the definition of

'extraordinary and compelling' reasons justifying compassionate release or sentencing reduction

are constrained by Application Note 1(D) of U.S.S.G. § 1B1.13. The answer is no").  Rather, "the

First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons

that an imprisoned person might bring before them in motions for compassionate release."

*Brooker,* 976 F.3d at 237.

According to the Second Circuit, the broad discretion afforded district courts in reducing

sentences under the First Step Act includes reductions resulting in sentences below a statutory

mandatory minimum.  *Halvon,* 26 F.4th at 570 (2d Cir. 2022) ("We now explicitly hold that a

mandatory minimum sentence does not preclude a district court from reducing a term of

imprisonment on a motion for compassionate release.").  In this case, the defendant has already

served a term longer than the mandatory minimum.

*Motion for Immediate Release Due to COVID Risks*

Defendant's application largely rests upon the risk of contracting COVID while in prison,

and the potential impact upon defendant given his medical profile.  His counsel vehemently insists

that these risks require his immediate release, and even suggests that his vaccination status is wholly irrelevant. Such claims are easily rejected.

Unquestionably, the availability of vaccines has dramatically reduced the risks of this dreaded disease. Thus, counsel's reliance on pre-vaccination COVID cases proves wholly inapposite. *See, e.g.* DE 93-1 at 9 (citing *United States v. Stolarz*, 2020 WL 7230680, at *1 (S.D.N.Y. Dec. 8, 2020) (releasing 80-year old defendant due to COVID risks)). In one respect, though, *Stolarz* proves telling, as at that time, when vaccines were not widely available, FCI Allenwood (where defendant is housed) reported 110 individuals testing positive for the virus; now, the institution reported somewhere between 6 and 13 active COVID cases. 2020 WL 7230680, at *3; DE 93-1 at 10; DE 96 at 4. Moreover, while counsel endeavors to establish that the vaccinations received by the defendant will not necessarily eliminate the risk of contracting the disease, the argument fails to account for the reduced risks of death or serious illness for those vaccinated.[3] Thus, Anderson's application for immediate release rings hollow, and is DENIED. But the analysis does not end there.

*Motion for a Sentencing Reduction Based on Reduced Risks of Recidivism*

"It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions." *Brooker,* 976 F.3d at 237. Having rejected the argument that the risk of contracting COVID warrants immediate release, the question remains as to whether the circumstances brought forward by Anderson would warrant a reduction of his

---

[3] *See, e.g.* CDC, COVID-19 Vaccines Continue to Protect Against Hospitalization and Death Among Adults (2022), *https://www.cdc.gov/media/releases/2022/s0318-COVID-19-vaccines-protect.html* ("COVID-19 vaccination continues to help protect adults against severe illness with COVID-19, including hospitalizations and death."); *United States v. Alvarez,* 2021 WL 3550218, at *3 (S.D.N.Y. Aug. 10, 2021) (vaccination "highly effective in preventing severe illness and death from the Delta and Beta variants of the coronavirus").

remaining sentence.   In some ways, this application resembles the situation faced by another sentencing judge, who found:

> And while the Court recognizes Defendant's conduct was clearly unlawful, the Court is mindful that Defendant presented evidence at his sentencing that his actions stemmed from then-untreated mental illness.   The Court also notes Defendant ultimately only took $782 from the bank he robbed.   Though he carried a pellet gun that may have frightened bystanders or witnesses to the crime, Defendant did not discharge the pellet gun during the offense, nor did he carry a more harmful weapon.   Defendant has served approximately three and one-half years of his four-year term of imprisonment, and the Court does not believe requiring him to remain incarcerated for an additional five months would meaningfully advance the goals of sentencing, particularly in light of his current health conditions and the looming risk of severe illness resulting from COVID-19. The Court also finds Defendant does not pose a danger to the safety of other people or his community once released.   He has served the majority of his four-year sentence and will remain subject to a three-year term of supervised release.   The Court concludes that releasing Defendant now would leave him with a sentence that is "sufficient, but not greater than necessary," and would not put the community in danger.

*United States v. Lavy,* 2020 WL 3218110, at *6 (D. Kan. 2020).   While *Lavy* presented more limited circumstances, there are some similarities: no one was injured by Anderson, no weapons were discharged, and he has already served a substantial portion of his sentence.   On balance, Anderson does bring forward some evidence of extraordinary circumstances.[4]   The expressed rationale of the sentence, which was predicated primarily, if not exclusively on the question of specific deterrence is somewhat unusual.   Anderson's combination of ailments – obesity, high blood pressure, atrial fibrillation, sleep apnea and damaged Achilles tendons – as well as his age and the circumstances of this case, narrowly crosses the threshold of extraordinary and compelling reasons, warranting an examination of the applicable 3553(a) factors.

---

[4] One would hope that the assertion that Anderson is "no longer the man he was at the time of the offense conduct" has some basis in fact.   DE 93-1 at 13-14.   Because counsel's demonstration of this assertion is limited to excerpts of unsworn correspondence, one could view such assertions with skepticism.

*The §3553 Analysis*

As discussed above, the question of specific deterrence – with a particular focus on future dangerousness – represented the central basis for the sentence imposed.  The issue of future criminal conduct involves prediction.  As the Supreme Court has observed:

> Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.  The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct.  And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.  For those sentenced to prison, these same predictions must be made by parole authorities.

*Jurek v. Texas*, 428 U.S. 262, 275 (1976).  Even when made by an experienced, careful trial judge on a full record, such determinations cannot possibly anticipate every possible intervening event. It is beyond peradventure that, at the time of his sentencing, Judge Feuerstein correctly found that defendant presented a substantial risk of recidivism.  The advent of defendant's various health concerns, together with his advancing age, significantly diminish (though do not necessarily eliminate) the risks that he will present a continuing danger to the community.

With the issue of specific deterrence largely resolved by defendant's health issues, the Court must examine the remaining §3553(a) factors to determine the extent of any sentencing reduction.  Thus, notwithstanding the reduced risk to the community presented by the defendant due to his deteriorating health, the Court must still be mindful of the need for punishment, general deterrence and promoting respect for the law.

Defense counsel properly notes that the 17 years already served by defendant (more than twice the applicable mandatory minimum) go far in satisfying the need for general deterrence.  Yet the circumstances of the offenses committed by defendant were extremely serious: he not only

used actual firearms, but also displayed a simulated explosive device to robbery victims to ensure compliance with his demands. Moreover, defendant was on parole from similar armed robbery offenses when he committed the instant offenses, having received leniency after serving the minimum of a seven to 14-year state sentence. DE 96 at 2; *compare United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) (upholding denial of First Step Act reduction based upon, in part, defendant's "audacity in committing this offense while still on supervised release"). The question of appropriate punishment and promoting respect for the law thus weigh against immediate release.

The Guidelines continue to provide an important starting point in considering the extent of any sentencing reduction. Nothing contained in this decision affects the original guidelines calculation, which yields a recommended sentencing range of 262 to 327 months. While the health issues articulated on this application bear heavily on defendant's dangerousness, I find that they would not amount to the kind of extraordinary physical impairment that would justify a below-Guidelines sentence based on U.S.S.G. §5H1.1. *See, e.g., United States v. Knowles*, 2019 WL 1306109, at *9 (E.D.N.Y. Mar. 20, 2019), *aff'd,* 794 F. App'x 134 (2d Cir. 2020) ("If a court determines a departure is appropriate because the defendant has an 'extraordinary physical impairment,' the impairment must be one that renders the defendant 'seriously infirm'"). The advisory Guidelines calculation takes into account the myriad factors, and provides a helpful reference.

On balance, considering all of the relevant factors, including defendant's age and physical limitations, I find that a sentence at the lower end of the advisory Guidelines range, to wit: 262 months, appears sufficient but not greater than necessary to serve the §3553 factors.

**Conclusion**

Defendant's application for immediate release is DENIED, but his motion for a sentence reduction is GRANTED.  His sentence is hereby reduced from 327 months to 262 months.  The remaining elements of the sentence – including but not limited to supervised release and restitution – shall remain unaffected.  Prison officials should, of course, recalculate the defendant's good time credits in determining an appropriate release date.


SO ORDERED.

Dated:  June 3, 2022
          Central Islip, New York

                                        /s/ Gary R. Brown_____
                                        GARY R. BROWN
                                        United States District Judge